MAY K. DODGE *vs.* EDWARD G. SAWYER.

CHARLES P. DODGE *vs.* SAME.

Middlesex.   October 2, 1934. — November 27, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

Practice, *Civil*, Requests, rulings and instructions, Charge to jury, Exceptions. *Evidence*, Opinion: expert; Presumptions and burden of proof.

Where, at the trial of an action for personal injuries sustained by a pedestrian when he was struck by an automobile operated by the defendant, the trial judge, in instructing the jury on the issue of contributory negligence, stated that the plaintiff had the right "to

rely to some extent" on the expectation that the defendant would exercise reasonable care not to injure him, the defendant was not harmed by the refusal of a request by him that the judge also state that the plaintiff "could not rely entirely upon that expectation": the words, "to rely to some extent," had to the jury the same force as the words, "could not rely entirely."

Where a trial judge instructed the jury that they were to decide a certain issue upon all the evidence, using their common sense, and were "not obliged to follow the opinion of any" of the expert witnesses, who gave conflicting testimony, an exception by one of the parties to a refusal by the judge of a request by him, made after the charge, that the judge further instruct the jury that if they were to reach a conclusion on the issue they must reach it upon "some" expert testimony and were not entitled to reach any conclusion if they disregarded all the expert testimony, must be overruled both because the evidence other than the expert testimony warranted the conclusion to which the jury came and also because the excepting party, not having filed any requests for rulings previous to the closing arguments, as required by Rule 71 of the Superior Court (1932), was not entitled to contend in this court that the charge, although accurate so far as it went, was incomplete.

Two ACTIONS OF TORT.  Writs dated December 2, 1931.

The actions were tried together in the Superior Court before *F. T. Hammond,* J.  Material evidence and exceptions saved by the defendant are described in the opinion. There were verdicts for the plaintiffs in the sums, respectively, of $9,666.67 and $1,000.  The defendant alleged exceptions.

*D. H. Fulton,* for the defendant.

*M. G. Rogers,* for the plaintiffs.

PIERCE, J.  These are actions of tort in which the plaintiff May K. Dodge alleges that she was injured through the negligence of the defendant in the operation of an automobile, and the plaintiff Charles P. Dodge, husband of said May K. Dodge, sues for consequential damages.  The cases were tried together to a jury.  The combined bill of exceptions is filed by agreement of the parties and by leave of the court.  It is therein stated that "There was evidence from which the jury could properly infer that the injuries occurred solely through the negligence of the defendant."  Before the charge the defendant filed no written requests for instructions.  Rule 71 of the Superior Court (1932) reads: "Requests for instructions or rulings in trials or hearings

with or without jury shall be made in writing before the closing arguments unless special leave is given to present requests later." The exceptions of the defendant "are to the charge and on the subjects of the female plaintiff's due care and the damage sustained by herself and her husband."

There was nonexpert testimony which would warrant the jury in finding that May K. Dodge, hereafter called the plaintiff, while crossing a public street was knocked down by an automobile driven by the defendant and that she was unconscious or semiconscious when she was brought into a hospital. The plaintiff testified that before the accident and her injury she was in good health and able to take care of her home, to drive a car, and to attend to the renting, collection of rents and supervision of real estate which she owned; that before the accident her memory was good; that she enjoyed social relations; that she was in the hospital as the result of the accident from June 2, 1931, the date of the accident and injury, until June 21, 1931; that since the accident she has suffered great loss of memory, is easily confused, and is unable to attend to the renting and supervision of her real estate.

There was nonexpert evidence relating to the amount of expenses incurred by Charles P. Dodge for the treatment of his wife at the hospital and after she returned home. Dr. Christie, called for the plaintiff, testified, in substance, that he treated her in 1929 for acute arthritis involving several joints, that at that time she did not exhibit any loss of memory, that she made a good recovery, and that this trouble would not affect her mentally. On cross-examination he testified that he had not seen the plaintiff since 1929 until the trial, and, at the time of his treatment of her, there was no evidence of arteriosclerosis. Dr. Tighe testified for the plaintiff, in substance, that he treated her on June 2, 1931, for a large hematoma in the occipital region; that she was semiconscious when brought to the hospital, that she had various marks on her body, and a swelling in the spine of the scapula; that she complained of headache and dizziness, vomiting everything she took for four days; that she was in the hospital for approximately three weeks

and was then discharged improved; that during all the time she was in the hospital she complained of headache and dizziness, and lack of memory, and this last complaint became progressively greater; that she no longer sought social relations but preferred to be alone; that she was confused when with others or when in a crowd; that she lost her way when coming to the office of the witness; that the week before the trial she said she felt better, but she looked very much worse; that she had become thin and yellow; that she could not carry on a conversation without stopping and making an heroic effort to call up her mental forces to supply the proper thing in her conversation, and not succeeding; that when he first saw her she had a cerebral concussion and he would not be surprised to find that she had a cerebral hemorrhage at the time of the accident; that in his opinion the plaintiff would get worse and would not get better and that she would very "shortly" go to bed probably not to get up again.

Dr. Myerson testified for the plaintiff at great length, describing her condition when he examined her on October 7, 1931, and again on October 13, 1933. More specifically he testified that she showed a marked hardening of the arteries; that he made certain tests as to her mentality, such as knowing where she was and what date it was, and in matters of that kind she "did fairly well"; but when given a series of numbers beyond six to remember, she would fail and become confused and after repeated efforts made by him she would get the answer correct; that this was not a marked failure of memory, but difficulty in concentrating, and that she was easily confused; that his diagnosis at the time was that the patient had marked cerebral hardening of the arteries with increased tenderness and was losing mentally; that the accident was probably "an aggravating factor, in that an arteriosclerotic brain does not do so well after accidents or injury as does a normal brain," and while the principal cause of her trouble was, therefore, cerebral arteriosclerosis and increased tenderness, an accessory and accelerating factor was the trauma which she had experienced. He further

testified that, if he assumed that the plaintiff was well when the accident occurred and that she then had hardening of the arteries, he would say that "recovery from any injury or an accident in the brain or elsewhere, but more conspicuously in the brain, depends upon the circulation within the brain, that is the blood stream, and the arteries are the main factor but they never recover from an injury."

Medical testimony for the defendant tended to support his position that the plaintiff at the time of the accident had a more than average sclerotic brain and that independently of the accident the condition was progressing at that time, and he contends that, if such testimony be believed, the issue was whether the accident caused the condition with which the plaintiff was troubled or whether the trouble was the development of an already existing condition.

In the charge the judge said: "It is claimed by the defendant that the plaintiff was chargeable with contributory negligence. If you find that the plaintiff was going along the east side of Kirk Street and crossing from the southeast corner to the northeast corner, and was looking to the east to see if there was a car coming on Paige Street, then it is the claim of the defendant, however she was coming, that she ought to have seen the defendant's car making this left hand turn and got out of its way. Well, it is a question for you to say, gentlemen. If you think a pedestrian under those circumstances is chargeable with negligence for failing to see a car under those circumstances and getting out of its way, why you will say so. A pedestrian has the right to rely to some extent on the expectation that any motor vehicle approaching him while he is in the travelled part of the way and not on the sidewalk will slow down and will use reasonable care not to injure him." It should be noted here that the testimony descriptive of the plaintiff's conduct at the time of the accident is not reported in the record. At the close of the charge the defendant requested the judge to add the words, "she could not rely entirely upon that expectation." To this request the judge said, "I do not think I will add to that," and allowed an

exception to the denial.  Assuming, without deciding, that the allowance of the exception operated as a "special leave" to present the request, *Chandler* v. *Prince*, 221 Mass. 495, 509, we think that the words "to rely to some extent" would to the average juryman have the same force as "could not rely entirely," and that the defendant was not harmed because the correlative rights and duties of both parties were not more fully defined.  *Emery* v. *Miller*, 231 Mass. 243.

During the charge the judge discussed the medical evidence and the plaintiff's physical condition.  He directed attention of the jury to the plaintiff's condition before and after the accident, and to the fact that there were medical experts on both sides.  He told the jury that they had need to use all the common sense that they had in determining the questions for their decision; that "Ordinarily in the trial of law suits persons are not allowed to express their opinions about things. . . . the facts of the case are all laid before the jury through witnesses, and then the jury are to form an opinion and nobody else is allowed to express an opinion, and in this case it is your opinion on this medical question that governs.  You are not controlled by the opinion of any expert.  You are not obliged to follow the opinion of any expert, and it is you that are the final judges of this medical question. . . . gentlemen, you have this question . . . to determine, whether this accident resulted in the condition in which the plaintiff now is. . . . you have to use your own common sense about that . . . taking all the evidence here and reaching such conclusions as you think . . . fair and just.  If you find that the condition of the plaintiff, whatever it is, is due to the accident, and you are satisfied on the question of liability, then you come to the question of damages.  If you find that the present condition of the plaintiff was not due to the accident, then, of course, you would not give compensation for that present condition, but if you find that the present condition is, you would."  The contention of the defendant as we understand it is that, if the jury disbelieved the testimony of all the medical experts, there remained no evidence upon which

they could reach a verdict of the size rendered in either action; and that they should have been instructed as to their duty in case the expert testimony was disregarded entirely. It is plain that the jury were not bound to believe the testimony of any one medical expert, or indeed the testimony of all the medical experts, even though their testimony had been uncontradicted. *Coddaire* v. *Sibley*, 270 Mass. 41, 47. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323.

The request of the defendant that the judge explain to the jury his instructions "that they are not obliged to believe any of the experts and can use their common sense," by adding the instructions "that while they are not obliged to accept the testimony of the experts, still if they adopt a theory or reach a conclusion with regard to the theory of the connection of this accident and these results, they must adopt it and reach it upon some medical evidence, and therefore they are obliged to listen to the medical evidence and cannot reach the conclusion without it. They cannot reach the conclusion merely because the accident happened in point of time before the alleged results," was denied rightly, and the exception thereto must be overruled.

Regardless of the belief or disbelief by the jury of the medical testimony, the nonexpert testimony of the plaintiff and others was sufficient to support the verdicts for the plaintiffs. The measure of damages if excessive was a matter for the consideration of the judge on a motion for a new trial based on a claim of excessive damages. The real position of the defendant is that the instructions were incomplete, though accurate as far as they went. If the defendant desired to raise the question of causation he should have done it by requests for instructions. We find no error in the denial of the defendant's requests after the instructions.

*Exceptions overruled.*