CAMEO CURTAINS, INC. *vs.* PHILIP CAREY CORPORATION
& another;[1] UNIVERSAL ROOFING AND SHEET METAL CO., INC.,
third-party defendant.

Bristol. November 7, 1980. — February 24, 1981.

Present: HALE, C.J., ROSE, & KASS, JJ.

*Sale,* Warranty. *Uniform Commercial Code,* Warranty, Privity of contract. *Limitations, Statute of.*

The statute of limitations period in G. L. c. 106, § 2-318, as amended through St. 1974, c. 153, was applicable to an action for breach of warranty against a manufacturer of roofing materials installed on the plaintiff's building in 1968 where the plaintiff's injuries occurred on various occasions from 1969 through 1975 and its damages were sustained in 1975. [425-426]

In an action for breach of warranty against a manufacturer of roofing materials, the plaintiff was not barred from recovery under the notice provisions of G. L. c. 106, § 2-318, where, although a leak had occurred in 1969, the plaintiff could not have known that the roofing materials were defective until 1973 and immediately notified the defendant thereof in writing. [426-427]

In an action for breach of warranty against a manufacturer of roofing materials installed on the plaintiff's building in 1968, the plaintiff was not barred from recovery by lack of privity with the defendant where its damages were sustained in 1975, and the action was therefore governed by G. L. c. 106, § 2-318, as amended through St. 1974, c. 153, which eliminated lack of privity as a defense. [427]

CIVIL ACTION commenced in the Superior Court on November 19, 1975.

The case was tried before *Ponte,* J., and a motion for judgment notwithstanding the verdict was reported by him.

[1] Celotex Corporation, the successor to the obligations of Philip Carey Corporation. For convenience of reference we shall refer only to Carey in this opinion.

*Alan S. Novick* for the plaintiff.

*James J. D'Ambrose* for Philip Carey Corporation & another.

KASS, J. Philip Carey Corporation (Carey) was the manufacturer of roofing materials which Universal Roofing and Sheet Metal Co., Inc. (Universal), installed in 1968 on a building belonging to the plaintiff Cameo Curtains, Inc. (Cameo). The roof failed. Cameo brought an action against Carey, which, in turn, brought Universal in as a third-party defendant.

The action against Carey was based on alternative theories of negligence and breach of warranty. A jury returned a general verdict for the defendant Carey on the negligence aspect of the case, thus effectively relieving Universal of liability. On the implied breach of warranty count, the jury returned a verdict for the plaintiff of $11,740. The judge also addressed special questions to the jury and, in reply to these, the jury found that the first time Cameo knew or might have known that the roofing materials were defective was February, 1973; that Cameo's injuries occurred on various occasions from 1969 through 1975; and that Cameo sustained damages on May 15, 1975.

Following the jury's return of the general verdict and answers to special questions (see Mass.R.Civ.P. 49(b), 365 Mass. 813 [1974]) on the claim of breach of warranty, Carey moved for judgment notwithstanding the verdict. The trial judge did not rule on the motion; instead, acting under G. L. c. 231, § 111, and Mass.R.Civ.P. 64, 365 Mass. 831 (1974), he reported the following questions:

(1) "Is the plaintiff's cause of action barred by the statute of limitations?"

(2) "Was sufficient notice of the alleged breach of warranties given by the plaintiff to the defendant within a reasonable time?"

(3) "Is the lack of privity of contract between the plaintiff and the defendant a bar to recovery by the plaintiff?"

Whether the jury might have found that Carey's materials were defective is, therefore, not in issue;[2] the controversy is over whether Cameo made its claim in a timely manner and whether Cameo's relationship to Carey was such as to cause the latter to be liable to Cameo.

1. *The timeliness of Cameo's action.* Cameo filed its action on November 19, 1975. Although a leak had occurred in 1969, shortly after Universal had installed the roof, the jury found that it was not until February, 1973, that Cameo became aware that the roof materials were defective.

In *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34-35 (1977), the court traced the legislative evolution of G. L. c. 106, § 2-318, that section of the Uniform Commercial Code which excludes the defense of privity in any suit against a manufacturer by a person whom the manufacturer "might reasonably have expected to use, consume or be affected by the goods." The two most recent amendments to § 2-318, those made in 1973 and 1974, are pertinent. The 1973 amendment (St. 1973, c. 750, § 1) added a statute of limitations which required that actions under § 2-318 be brought within two years of the date of the injury. The 1974 amendment (St. 1974, c. 153) extended the period to three years "after the date the injury *and damage occurs*" (emphasis added). We read the addition of the words "and damage" which the Legislature added in 1974 as extending the beginning of the limitations period from the time when the injury is first perceived to the time when the damage flowing from the injury can fairly be estimated.[3] In the in-

---

[2] There was evidence which warranted the jury in concluding that the Carey product used, No. 40 double-coated felt, suffered from an inherent defect in that moisture was trapped in the core of the material during manufacture. This moisture would contract and expand with fluctuations in temperature, stretching the roof membrane until it eventually split.

[3] There may be occasions when damage can be estimated before the cause of that damage, i.e. the injury, is understood. Whether in such a case the limitations period would commence after whichever event occurs last is an issue we need not decide.

stant case, the date which the jury found to be the date when the damage occurred was May 15, 1975.

Since the suit began about six months later, it fell comfortably within the three-year statute of limitations established by St. 1974, c. 153, unless the 1974 act was not applicable to a sale made in 1968, i.e., well before the effective date of the act. That question was answered in *Hoffman* v. *Howmedica, Inc.,* 373 Mass. at 35-36, which held that the amendments effected by the 1973 amendment were applicable to injuries which occurred after the effective date of the act, even though the sale had occurred before that date. Although the court in *Howmedica* relied primarily on St. 1973, c. 750, § 2, which expressly made the substantive amendments applicable to injuries after the effective date of the act, the court also took into account the apparent purpose of the Legislature in "deemphasizing the 'sale' transaction" and looking "instead to the harm which may result from defects contained in items in commerce which may cause injury to the class of plaintiffs specified in the statute." *Hoffman* v. *Howmedica, Inc.,* 373 Mass. at 36. The same reasoning applies to St. 1974, c. 153, of which the court was aware in the *Howmedica* case. See 373 Mass. at 35 n.3. See also *Swartz* v. *General Motors Corp.,* 375 Mass. 628, 630-631 (1978); compare *Mansfield* v. *GAF Corp.,* 5 Mass. App. Ct. 551, 555-556 (1977), in which the injury occurred prior to the enactment of the 1973 amendment. We conclude that Cameo brought its action within the limitations period built into § 2-318. This would be so even if the time had been calculated from the time of injury alone, since the jury found that injury had occurred as late as 1975.

2. *Adequacy of notice of the alleged breach of warranty.* Our resolution of the first question posed by the trial judge — that because § 2-318, as amended through St. 1974, c. 153, applied to Cameo's damage notwithstanding the earlier sale and that the action, therefore, was not barred by the statute of limitations — governs our decision of the second question, viz., whether Cameo gave Carey adequate

notice of the alleged breach of warranty. The text of § 2-318 includes the sentence, "Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby."

The jury found specifically that Cameo could not have known the roofing materials were defective until February, 1973. There was evidence that Cameo notified Carey at once in writing and, indeed, was persistent in calling upon Carey to make repairs. Carey attempted to make repairs, as it was bound to do under the terms of a bond it had sold to Cameo wherein Carey pledged itself to make repairs to Cameo's roof for twenty years.[4] The repair efforts were not successful. Because of the express provision concerning notice in § 2-318, there is no occasion to consider the applicability of G. L. c. 106, § 2-607 (3) (a). Compare *Sullivan* v. *H. P. Hood & Sons*, 341 Mass. 216, 224 (1960), construing a predecessor section of § 2-607. In the absence of delay in notice, there is no question of prejudice by reason of delay.

3. *Lack of privity.* Does the lack of privity bar recovery? It does not. The fundamental purpose of § 2-318, as amended, is to eliminate lack of privity as a defense in a breach of warranty action. See *Hoffman* v. *Howmedica, Inc.*, 373 Mass. at 34-36; *Swartz* v. *General Motors Corp.*, 375 Mass. at 630-631; *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 357 (1978). Compare *Necktas* v. *General Motors Corp.*, 357 Mass. 546, 549 (1970).

As to the first and third questions posed by the judge in his report, we answer: no. As to the second question: yes.

The motion for judgment notwithstanding the verdict shall be denied, and judgment is to enter in accordance with the general verdict of the jury.

*So ordered.*

---

[4] The protection of the roof bond was illusory since Carey's repair obligations under the bond are limited to its principal amount, $1,450, substantially less than the cost of replacing the roof.